STATE EX REL. THIBODEAU, RELATOR, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 5,497.)

(Submitted March 8, 1924.  Decided March 29, 1924.)

[224 Pac. 866.]

*Writ of Prohibition—Intoxicating Liquors—Searches and Seizures—Illegal Search-warrant—Suppression of Evidence.*

Prohibition—Writ Lies, When.
  1.   Where it is apparent that the district court cannot under any conceivable circumstances render a valid judgment in a cause pending before it, and an appeal would be neither speedy nor adequate, the writ of prohibition lies to prevent it from proceeding further.
Intoxicating Liquors—Illegal Search-warrant—Prohibition Lies to Prevent Use of Articles Seized, as Evidence.
  2.   Where personal property seized under an illegal search-warrant was about to be used as evidence in a prosecution against its owner for a violation of the liquor law and a petition to suppress its use had been denied, the writ of prohibition lies to prevent the threatened use of the property as evidence, since a judgment of conviction based

----

2.   Admissibility of evidence secured by search or seizure, see notes in 94 Am. St. Rep. 345; 15 Ann. Cas. 1205; Ann. Cas. 1915C, 1182.

thereon would be void, and the remedy by appeal would be neither speedy nor adequate.

Same—Search-warrant—Deposition of Applicant—Insufficiency.

3. A deposition given by an applicant for a warrant to search a dwelling-house for evidence of a violation of the liquor law, consisting of expressions of opinion or belief founded upon suspicions based upon conjecture, *held* to have been insufficient to enable the magistrate who issued the warrant to say from the statements made therein that probable cause for issuance of the warrant existed.

Same—Search and Seizure Statutes not Intended to Permit "Fishing Expeditions."

4. Search and seizure statutes are not intended to permit "fishing expeditions" into the homes of citizens on the possibility that evidence of crime may be disclosed.

Same—Search-warrant—Return—Description of Premises—Fatal Variance.

5. The variance between a search-warrant authorizing search of premises described as "609 A Street" and the return of the searching officer that he had searched "906 A Street," was fatal and not cured by the addition of the words in the return "as described in said warrant."

Same—Void Search-warrant—Discovery of Contraband Articles not Justification for Seizure.

6. Discovery of liquor and other contraband articles under an illegal search-warrant did not have the effect of rendering the search lawful.

Same—Illegal Seizure—Use of Articles as Evidence Improper When.

7. Where objection to the use of liquor and other articles seized under a void search-warrant had been seasonably made by a direct proceeding prior to trial of their owner, they could not be used as evidence against him.

Same—Illegal Search-warrant—Contraband Articles Seized will not be Ordered Returned by Supreme Court in Original Proceeding.

8. Intoxicating liquor and other articles, presumptively of a contraband nature, seized under a void search-warrant will not be ordered returned to their owner by the supreme court on application for writ of prohibition to prevent their use as evidence against him under a charge of illegally possessing and selling liquor.

Original application for a writ of prohibition by the State, on the relation of William Thibodeau, against the District Court of the Fourth Judicial District in and for the County of Missoula, Theodore Lentz, Judge, and John Bonner, Justice of the Peace. Writ issued.

*Mr. Dan. J. Heyfron* and *Mr. W. E. Keeley,* for Relator, submitted a brief and argued the cause orally.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. Dwight N. Mason,* County Attorney of Missoula County, submitted a brief; *Mr. Mason* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

Original application for a writ of prohibition. On August 30, 1923, R. E. Herrick, a prohibition enforcement officer, filed with a justice of the peace of Missoula county a complaint for the purpose of obtaining a warrant to search the dwelling-house and premises occupied by William Thibodeau. In the complaint this appears: "That he has just and probable cause to believe, and does believe, that intoxicating liquor is now being unlawfully sold and kept for sale, to-wit, at and within a certain dwelling-house and outbuildings situated upon the following described property: House No. 609 Alder Street in the city of Missoula, Montana, together with the outbuildings at said number situated upon the west one-half of lot 2 and all of lot 3, block numbered 40, in McCormick addition to the city of Missoula, Montana."

As reasons for his belief he alleged that he "saw the said William Thibodeau engaged in transporting intoxicating liquor to said building and for the further reason that the said William Thibodeau is engaged in the business of selling and transporting intoxicating liquor from said buildings, and has no other business; that he is engaged at all hours of the night and day in going to and from said premises while conducting said business in violation of the law, all of which is unlawful and prohibited." In his deposition, given under the requirement of section 12397, Revised Codes of 1921, except as to the description of the premises he sought to search he failed to give any testimony in support of the allegations of the complaint. Having said he had known the defendant for at least three years, he was asked the question, "To your knowledge what has been his business for the past two or three years?" to which he answered, "That of a bootlegger." He said that during the year 1922 he had occasion to arrest the defendant on two different occasions "while in the act of transporting intoxicating liquor." Whether the defendant was then unlaw-

fully transporting intoxicating liquor, whether the arrests were or were not justified, does not appear. "Q. What leads you to believe he is now engaged in the violation of the state and federal prohibition law? A. I have observed him on numerous occasions drive to and from his residence at all hours of the night and load and unload certain goods from his automobile, which I believe contains intoxicating liquor. Q. From your knowledge of defendant's business, would the goods which you have mentioned be any other than intoxicating liquor? A. I don't think so. Q. And from your knowledge of the defendant and his business, do you believe that the trips which he makes to these buildings at all hours of the day and night are for the purpose of violating the law above mentioned? A. I think they are. Q. Would you say that he uses and keeps these buildings for the purpose of violating the law? A. I think he is. Q. And that he now has intoxicating liquor stored there? A. I think so."

Upon the foregoing "testimony" the justice issued a warrant commanding the officer to make search of the premises described. On the same day the sheriff made return that he had served the warrant upon Mrs. William Thibodeau at 906 Alder Street in the city of Missoula, the premises described in said warrant, that he had searched the premises therein described and had seized certain property, a list of which he set forth in an inventory attached to the return. This inventory shows that he seized a considerable quantity of moonshine whisky, beer, wine, kegs, bottles, jugs and the like.

On August 31, 1923, the justice of the peace filed with the district court the complaint, deposition, search-warrant, return and inventory, as he was required to do by section 12413, Revised Codes of 1921; and on that day the county attorney of Missoula county filed an information in the district court charging Thibodeau with the crime of possessing intoxicating liquors on August 30, 1923. Following the filing of the information

Thibodeau was arrested, arraigned upon the information and required to give bail or suffer imprisonment.

On November 1, 1923, Thibodeau filed in the district court a petition to suppress the testimony obtained by virtue of the search-warrant and to preclude its use as evidence against him and for an order returning the property. After many delays the court denied the petition and assigned for trial the criminal case against him. Whereupon Thibodeau, as relator, filed an application in this court for a writ of prohibition designed to prevent the use of the property seized under the search-warrant as evidence. Return of the property is asked also. He alleges that the only evidence in the possession of the state to support a prosecution under the information is that secured by means of the search and seizure. The respondents have appeared by answer.

1. At the outset we are confronted with an objection on part [1, 2] of counsel for respondents against the maintenance of this proceeding. They assert that a writ of prohibition ought not to issue because relator has an adequate remedy by appeal. This upon the theory that (1) he might have appealed from the order denying the petition to return the property, and (2) should he be convicted he will have the right of appeal from the judgment. There is no merit in the first point.

Without entering into an extended discussion of the second point it is sufficient to say that by reason of the facts and circumstances appearing in this record the remedy of appeal is not an adequate remedy immediately available. For reasons which will appear presently, the court cannot render a valid judgment based upon the testimony obtained under the search-warrant. The admission in evidence of that testimony (timely application to suppress it having been made) would be reversible error. In *State ex rel. Lane* v. *District Court,* 51 Mont. 503, L. R. A. 1916E, 1079, 154 Pac. 200, this court said: "Whenever it is made to appear, as in this instance, that under no conceivable circumstances can the district court render a

valid judgment" the writ should issue.    Why should the state
seek to burden itself with the labor and expense of a useless
trial?    Why should the citizen, presumed to be innocent, be
subjected to the humiliation and expense of a trial when no
valid judgment can be rendered against him?

The existence of a remedy by appeal is not of itself a bar
to prohibition, unless that remedy be plain, speedy and ade-
quate.    (Sec. 9862, Rev. Codes 1921.)    "A remedy is speedy
when, having in mind the subject matter involved, it can
be pursued with expedition and without essential detriment
to the party aggrieved; and it is neither speedy nor adequate
if its slowness is likely to produce immediate injury or mischief.
(23 Cyc. 617.)"    (*State ex rel. Marshall* v. *District Court,* 50
Mont. 289, Ann. Cas. 1918C, 164, 146 Pac. 743; *State ex rel.
Ex. & T. Board* v. *Jackson,* 58 Mont. 90, 190 Pac. 295.)

The writ was issued in *State ex rel. Samlin* v. *District Court,*
59 Mont. 600, 198 Pac. 362, without comment by the court,
although over strenuous objection by counsel for the re-
spondents in that case.    For the reasons appearing in the
*Samlin Case,* the same appearing here, it seems clear that the
remedy by appeal would not be either plain, speedy or ade-
quate in view of the impending emergency.

2. Upon the merits.    The complaint filed by Herrick is not
[3] supported by the deposition.    While Herrick denominated
Thibodeau a bootlegger, he does not make a single positive
statement, unless we except the description of the property to
be searched, which sustains the complaint.    At best the deposi-
tion consists of expressions of opinion or belief founded upon
suspicions based upon conjecture.    Rather than showing prob-
able cause the deposition shows the want of it.    For instance,
take the statement, "I have observed him [Thibodeau] * * *
load and unload certain goods from his automobile which I
believe contains intoxicating liquor."    This is even more far-
fetched than the conditions shown in the case of *In re Liquors
Seized at Auto Inn,* 204 App. Div. 185, 197 N. Y. Supp. 758,

where the proceedings were held insufficient; and see *United States* v. *Rykowski* (D. C.), 267 Fed. 866.

In the instant case probable cause cannot be said to have existed under any of the definitions quoted by this court in *State ex rel. Neville* v. *Mullen,* 63 Mont. 50, 207 Pac. 634. It cannot be said from Herrick's testimony that he possessed a knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he had lawful grounds for prosecuting the defendant for the crime of either possessing or selling intoxicating liquor, much less using his dwelling-house for the unlawful sale or manufacture of it. Under the provisions of section 11071 as amended, "no search-warrant shall issue to search any private dwelling occupied as such unless being used for the unlawful sale or manufacture of intoxicating liquor." (Laws 1923, Chap. 116.) From the knowledge possessed by Herrick as exhibited in his deposition he would not have been justified in arresting Thibodeau without a warrant; his suspicions were far from rising to the level of what the officer knew and saw in the *Neville Case.*

It must be borne in mind constantly that in order to obtain the issuance of a search-warrant the facts must be stated under oath and the magistrate to whom the application is presented must be able to determine their sufficiency without reference to the opinion, belief or conclusion of the applicant. Regardless of the applicant's beliefs or conclusions, the application must set forth the facts sufficiently to enable the judicial officer to say from the statement made that probable cause exists. This was stated plainly in the *Samlin Case, supra,* in which the court called attention to the fact that "as search-warrants are a species of process exceedingly arbitrary in character, and which ought not to be resorted to except for very urgent and satisfactory reasons, the rules of law which pertain to them are of more than ordinary strictness"; and if a "party acting under them expects legal protection, it is essential that these rules be carefully observed," quoting Judge Cooley's language.

It may be observed that the search and seizure statutes are [4] not intended to permit fishing expeditions into the homes of citizens on the possibility that evidence of crime may be disclosed. (*Federal Trade Commission* v. *American Tobacco Co.* (U. S.), 68 L. Ed. 382, 44 Sup. Ct. Rep. 336.) If this were not so, law-abiding citizens might be subjected to unseasonable calls and unreasonable searches without a showing of probable cause as the law reasonably requires.

As we have observed in *State ex rel. King* v. *District Court, ante*, p. 191, 224 Pac. 862, the exercise of the power of search and seizure is absolutely essential to the public welfare. Without it certain criminal practices would go practically unchecked, many criminals go unwhipped of justice. Law, order and decency would be flouted and scorned. But the process may be exercised, and the law enforced and vindicated, without transgressing those constitutional guaranties which are provided for all alike, the guiltless and the guilty.

Article III of our state Constitution—"a declaration of rights of the people of the state of Montana"—commands: "The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures, and no warrant to search any place or seize any person or thing shall issue without describing the place to be searched, or the person or thing to be seized, nor without probable cause, supported by oath or affirmation, reduced to writing." (Sec. 7.)

"No person shall be compelled to testify against himself, in a criminal proceeding." (Sec. 18.)

These are practically identical with the fourth and fifth amendments. As to these the supreme court of the United States has spoken as follows: "It would not be possible to add to the emphasis with which the framers of our Constitution and this court (in *Boyd* v. *United States*, 116 U. S. 616, 29 L. Ed. 746, 6 Sup. Ct. Rep. 524, in *Weeks* v. *United States*, 232 U. S. 383, 58 L. Ed. 652, 34 Sup. Ct. Rep. 341 [see, also, Rose's U. S. Notes], and in *Silverthorne Lumber Co.* v. *United States*,

70 Mont.—14

251 U. S. 385, 64 L. Ed. 319, 40 Sup. Ct. Rep. 182) have declared the importance to political liberty and to the welfare of our country of the due observance of the rights guaranteed under the Constitution by these two amendments. The effect of the decisions cited is: That such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty and private property'; that they are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen—the right, to trial by jury, to the writ of *habeas corpus* and to due process of law. It has been repeatedly decided that these amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts or by well-intentioned but mistakenly overzealous executive officers.'' (*Gouled* v. *United States,* 255 U. S. 298, 65 L. Ed. 647, 41 Sup. Ct. Rep. 261.)

There is nothing inharmonious in the fourth, fifth and eighteenth amendments, consequently not in our sections 7 and 18 and the eighteenth amendment, and there should not be any want of harmony in their application. By an ordinarily careful and sensible adherence to the laws of the land, constitutional and statutory, in most cases even a semblance of conflict between them may be avoided.

3. The warrant authorized the officer to search the premises [5] described as 609 Alder Street, together with the outbuildings at said number situated upon (describing the lots and block), while the officer returns that he searched "906 Alder Street, described in said warrant." The phrase "described in said warrant," following "906 Alder Street," cannot be held to cure what appears to be a fatal variance. It cannot be said that the officer searched the premises described in the warrant—609 Alder Street. Where certainty is neces-

sary uncertainty will not suffice.   (*State* v. *Malarky*, 57 Mont. 132, 187 Pac. 635; *King Case, supra.*)

The officer in·making the search was a trespasser.   The search **[6-8]** being unlawful discovery of the liquor did not make it lawful.   (*King Case.*)   The seizure of the liquor and articles mentioned in the inventory was unlawful.   Objection to their use as evidence having been made seasonably by a direct proceeding instituted prior to the trial, they cannot be so used.   Presumptively, however, the liquor and other articles are contraband.   Therefore this court will not order their return.

Relator is entitled to the issuance of a writ prohibiting the use as evidence of the liquor and other articles seized upon the occasion of the unlawful search upon the trial of relator, as well as evidence of the possession thereof so acquired; and it is so ordered.

ASSOCIATE JUSTICES COOPER, HOLLOWAY, GALEN and STARK concur.