STATE, APPELLANT, *v.* McDANIELS, RESPONDENT.

(No. 5,798.)

(Submitted November 8, 1925. Decided December 9, 1925.)

[243 Pac. 810.]

*Criminal Law — Poisons — Narcotics — Unlawful Possession — Searches and Seizures—Suppression of Evidence—Failure to Make Timely Motion Bars Right to Object to Evidence.*

1. Where defendant, charged with the unlawful possession of opium, was arrested without a warrant and in the course of his arrest a package of the drug either fell from his person or was thrown by him to the floor and seized by the officer, made no attempt to have the evidence thus secured suppressed in the interim between the date of arrest and the date of trial (two weeks), he was not in a position to object to its introduction on the alleged ground that it had been unlawfully obtained.

[1] Criminal Law, 16 C. J., sec. 1110, p. 571, n. 95 New.

*Appeal from District Court, Yellowstone County; O. F. Goddard, Judge.*

J. McDANIELS was accused of unlawfully possessing opium. From a directed verdict of not guilty, the state appeals. Reversed and remanded.

1. See 8 R. C. L. 194, 196.

*Mr. L. A. Foot,* Attorney General, *Mr. John B. Tansil,* County Attorney of Yellowstone County, and *Mr. George S. Smith,* Deputy County Attorney, for Appellant, submitted a brief; *Mr. Tansil* argued the cause orally.

The great weight of authority sustains the rule that evidence, however unfairly and illegally obtained, is not subject to exclusion if it be of facts in themselves relevant. (*State* v. *Fuller,* 34 Mont. 12, 22, 9 Ann. Cas. 648, 8 L. R. A. (n. s.) 762, 85 Pac. 369; *State* v. *McDaniel,* 39 Or. 161, 65 Pac. 520; *State* v. *Royce,* 38 Wash. 111, 3 Ann. Cas. 351, 80 Pac. 268, 269; *State* v. *Sutter,* 71 W. Va. 371, 43 L. R. A. (n. s.) 399, 76 S. E. 811; *Bush* v. *State,* 112 Neb. 384, 199 N. W. 792; *State* v. *Chin Gim,* 47 Nev. 431, 224 Pac. 798; *State* v. *Rowley,* 197 Iowa, 977, 195 N. W. 881; *State* v. *Prescott,* 125 S. C. 22, 117 S. E. 637; *People* v. *Mayen,* 188 Cal. 237, 205 Pac. 435; *Massantonio* v. *People,* 77 Colo. 392, 236 Pac. 1019; 8 R. C. L., p. 194; 16 C. J., p. 570.)

*Mr. H. C. Crippen,* for Respondent, submitted a brief and argued the cause orally.

The major portion of appellant's argument is based on the general principle of evidence as stated by Greenleaf:

"Though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue. The court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question." (Greenleaf on Evidence, p. 348, sec. 254.) This broad rule has been adopted by about half of the state courts of last resort, and vigorously upheld. (4 Wigmore on Evidence, 2d ed., p. 635, sec. 2184.) On the other hand, the supreme court of the United States and other federal courts, together with the rest of the state courts having occasion to consider the ques-

tion, have modified the rule to the extent that if a petition was made for the return of the articles supposed to have evidentiary value and which had been unlawfully procured, and a timely motion made to suppress the same, the petition would be granted and the motion sustained. (*Boyd* v. *United States,* 116 U. S. 616, 29 L. Ed. 746, 6 Sup. Ct. Rep. 524; *Weeks* v. *United States,* 232 U. S. 383, Ann. Cas. 1915C, 1177, L. R. A. 1915B, 834, 58 L. Ed. 652, 34 Sup. Ct. Rep. 341.) The whole matter is ably presented in *State of West Virginia* v. *Wills,* 91 W. Va. 659, 114 S. E. 261, and annotation thereto, reported in 24 A. L. R. 1398, together with the supplemental case and annotation of *State of Missouri* v. *Owens,* reported in 302 Mo. 348, 32 A. L. R. 383, 259 S. W. 100. See, also, *People* v. *Castree,* 311 Ill. 392, 32 A. L. R. 364, 143 N. E. 112; *Gouled* v. *United States,* 255 U. S. 298, 65 L. Ed. 647, 41 Sup. Ct. Rep. 261; *Amos* v. *United States,* 255 U. S. 313, 65 L. Ed. 654, 41 Sup. Ct. Rep. 266; *Holmes* v. *United States,* 275 Fed. 49; *Ganci* v. *United States,* 287 Fed. 60.

Respondent submits that he was not in a position to make a motion to suppress the evidence sought to be introduced. He had entered a plea of not guilty, contending that he did not have the opium in his possession, as alleged. In order to have made the motion, he would have had to admit the possession. This he could not do. His defense, if any defense he had at all, was that the officers were mistaken in saying that he dropped the same. However, he could not anticipate what the officers would say. He did not know but what they had a warrant for his arrest. Had they said they had a warrant, then their act in finding the opium would have been lawful. On the other hand, had they testified that before arresting the defendant they saw him drop the package; that they picked it up, found it was opium, and thereupon arrested him, the defendant could not object, because the offense had been committed in the presence of the officers. The defendant could not possibly know how the state would place the opium in his possession, or at exactly what point of time. There was

no need for a motion to suppress, for the reason at most that there was no collateral issue to be determined.

MR. JUSTICE STARK delivered the opinion of the court.

The undisputed evidence in this case shows that on May 11, 1925, at the Gem rooming-house in Billings, officers, without having a warrant therefor, placed the defendant under arrest. As they did so, a bindle, or package, of opium containing about ten grains, fell on the floor at defendant's feet. This bindle either accidentally fell from the defendant's pocket or he voluntarily threw it away. How it got to the floor from defendant's person is immaterial on this appeal. It was immediately picked up by the officers, who declared in defendant's presence: "Here it is; here's the stuff." The defendant, having been asked where he obtained the package, said he got it "from a Chinaman," and that "he was going to smoke it."

Two days later, on May 13, the county attorney filed an information in the district court charging that the defendant, on or about May 11, 1925, unlawfully, *etc.*, had "in his possession and under his control certain narcotic drugs, to-wit, approximately ten grains of opium. * * * "

Defendant was placed on trial on May 25, 1925. After [1] making necessary preliminary proof, the state offered in evidence as its Exhibit "A" the bindle of opium which had been picked up at defendant's feet as above recited. To this offer counsel for defendant objected on the ground that Exhibit "A" had been unlawfully and illegally obtained, "for the reason that the defendant was not lawfully under arrest before this package was found on the floor or before he dropped it, if he did drop it." This objection was sustained by the court, whereupon the state, having no further evidence of the possession of narcotics by defendant, rested its case. Upon motion of counsel for defendant, the court directed the jury to return a verdict of not guilty, which was

accordingly done. The state has appealed from this order and assigns as error the ruling of the court in sustaining the objection to Exhibit "A" and the order directing the jury to return a verdict of not guilty.

The assignments of error are well taken. It is not necessary to decide whether in fact the bindle of opium was unlawfully or illegally obtained. The defendant claimed that it was, and for a period of nearly two weeks must have known that it would be offered in evidence against him at his trial on a felony charge. Knowing this fact, as well as the circumstances under which it had been obtained by the officers, he made no move to secure its suppression as evidence. It is idle for counsel to argue that his first opportunity to object to its use was when it was offered as evidence at the trial. The whole record contradicts such contention. If the defendant did not wish to have this bindle of opium used as evidence against him, it was his duty to have taken proper and timely steps to have its use as such suppressed in the manner allowed by law. Having failed to do this his objection at the trial came too late to avail him. This rule has been announced by this court many times during the past few years. (See *State ex rel. Samlin* v. *District Court,* 59 Mont. 600, 198 Pac. 362; *State* v. *Gotta,* 71 Mont. 288, 229 Pac. 405; *State* v. *Rice,* 73 Mont. 272, 235 Pac. 716.)

The order appealed from is reversed and the cause remanded to the district court of Yellowstone county for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and MATTHEWS concur.